**RECORD NO. 13-2345**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**UNITED STATES OF AMERICA EX REL. KAREN T. WILSON,**

*Plaintiff – Appellant,*

v.

**GRAHAM COUNTY SOIL & WATER CONSERVATION DISTRICT; CHEROKEE COUNTY SOIL & WATER CONSERVATION DISTRICT; RICHARD GREENE, in his individual capacity; WILLIAM TIMPSON, in his individual capacity; KEITH ORR, in his individual and official capacities; RAYMOND WILLIAMS, in his individual capacity; DALE WIGGINS, in his individual capacity; GERALD PHILLIPS, in his individual capacity; ALLEN DEHART, in his individual capacity; LLOYD MILLSAPS, in his official capacity; BILLY BROWN, in his individual capacity; LYNN CODY, in his individual capacity; BILL TIPTON, in his official capacity; C. B. NEWTON, in his individual capacity; EDDIE WOOD, in his individual capacity; GRAHAM COUNTY,**

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT BRYSON CITY**

————————

**BRIEF OF APPELLANT**

————————

**Mark T. Hurt**
**THE LAW OFFICES OF**
**MARK T. HURT**
**159 West Main Street**
**Abingdon, VA 24210**
**(276) 623-0808**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-2345      Caption: United States of America ex rel.   Wilson v. Graham County S&W, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Karen Wilson
(name of party/amicus)


who is appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                               ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                   ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: 11/19/2013

Counsel for: Karen Wilson

## CERTIFICATE OF SERVICE
**************************

I certify that on 11/19/2013 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Richard Greene          William Timpson
P.O. Box 96             P.O. Box 318
Tipton, NC 28781        Marble, NC 28905

Billy Brown             Paul Taylor, Esq.
P.O. Box 1185           Charles R. Jones Federal Bldg., ,
Robbinsville,, NC 28771 401 West Trade Street
                        Charlotte, NC 28202

Robbinsville, NC 28771

_____
        (signature)

11/19/2013
  (date)

- 2 -

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    The Government Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Karen Wilson – Graham District Secretary . . . . . . . . . . . . . . . . . . . 4

      C.    Earlier Wrongdoing By the Individual Defendants . . . . . . . . . . . . . 4

      D.    Key Allegations In Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      E.    Wilson – A Unique Viewpoint As The Fraud Unfolds . . . . . . . . . . . 6

      F.    Wilson's 1995 Letter To The USDA . . . . . . . . . . . . . . . . . . . . . . . . 7

      G.    The Graham County Audit Report – Issued In 1996 . . . . . . . . . . . . 7

      H.    Wilson's 1996 Written Statement To Special Agent Golec . . . . . . . . 8

      I.    The USDA Report Issued By Special Agent Golec In 1997 . . . . . . . 9

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.    The District Court Erred In Concluding That The Public
      Disclosure Bar Was Triggered . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    The District Court Erred, As A Matter Of Law, In
            Concluding The USDA Report And The Audit Report
            Were Publicly Disclosed . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    The Conclusion Of The District Court — That Wilson
            Derived Her Allegations From the Audit Report And
            USDA Report — Is Refuted By Its Acknowledgment
            That Wilson Wrote Letters Pre-dating The Issuance Of
            The Reports Because Those Letters Contain The Gist Of
            The Alleged Wrongdoing . . . . . . . . . . . . . . . . . . . . . . . . . 17

            1.    USDA Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            2.    The Audit Report . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.   In Any Case, The District Court Erred In Concluding That
      Wilson Was Not An Original Source . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Graham Co. Soil & Water Conservation Dist., et al. v. U.S. ex rel. Wilson*,
545 U.S. 409 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Graham Co. Soil & Water Conservation District v. U.S.  ex rel. Wilson*,
559 U.S. 280 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kennard v. Comstock Res., Inc.*,
363 F.3d 1039 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
933 F. Supp. 2d 825 (E.D. Va. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States ex rel. Branch Consultants , LLC v. Allstate Ins.*,
782 F. Supp. 2d 248 (E.D. La. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States ex rel. Findley v. FPC-Boren Employees Club*,
105 F.3d 675 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States ex rel. Hagood v. Sonoma* Cty.,
929 F.2d 1416 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States ex rel. Matthews v. Bank of Farmington*,
166 F.3d 853 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States ex rel. Radcliffe v. Purdue*,
737 F.3d 908 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 12, 17-18, 19, 23

*United States ex rel. Ramseyer v. Century Healthcare Corp.*,
90 F.3d 1514 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*United States ex rel. Rost v. Pfizer, Inc.*,
507 F.3d 720 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*United States ex rel. Schumer v. Hughes Aircraft Co.,*
    63 F.3d 1512 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Smith & Nephew, Inc.,*
    749 F. Supp. 2d 773 (W.D. Tenn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States ex rel. Springfield Ry.Co. v. Quinn,*
    14 F.3d 645 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States ex rel. Whitten v. Cmty. Health Sys.,*
    575 F. Supp. 2d 1367 (S.D. Ga. 2008) . . . . . . . . . . . . . . . . . . . . . . 15, 22

*United States ex rel. Williams v. NEC Corp.,*
    931 F.2d 1493 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States ex rel. Wilson v.*
*Graham Co. Soil & Water Conservation Dist., et al.,*
    367 F.3d 245 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States ex. rel. Wilson v.*
*Graham Co. Soil & Water Conservation Dist., et. al.,*
    424 F.3d 437 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States ex rel. Wilson v.*
*Graham Co. Soil & Water Conservation Dist., et al.*
    528 F.3d 292 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*United States ex rel. Wilson v.*
*Graham Co. Soil & Water Conservation Dist., et al.,*
    No. 07-1322, 399 Fed. Appx. 774 (4th Cir. Oct. 1, 2010) . . . . . . . . . . . . 13

*Velasco v. The Government Of Indonesia,*
    370 F.3d 392 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

31 U.S.C. § 3729 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

31 U.S.C. § 3730(e)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 12

31 U.S.C. § 3730(e)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

31 U.S.C. § 3730(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**OTHER AUTHORITIES**

Dodd, Frank, Pub. L. 111-203 § 1079(A)(c)(3)(2010) . . . . . . . . . . . . . . . . . . . . . 2

Patient Protection and Affordable Care Act,
  Pub. L. 111-148, § 10104(j)(2) (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## JURISDICTIONAL STATEMENT

On October 1, 2013, the district court granted the defendants' motion to dismiss and entered an order of dismissal. On October 31, 2013, relator Karen Wilson timely filed her notice of appeal. Thus, this Court has jurisdiction to entertain this appeal. *See* 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Did the district court err in dismissing this False Claim Act (31 U.S.C. § 3729 *et seq*.) (FCA) qui tam action based on the FCA's public disclosure bar set forth in 31 U.S.C. § 3730(e)(4)(A)?

## STATEMENT OF THE CASE

This case already has a unique and important place in FCA jurisprudence. In its history are two published decisions of this Court, which were reversed, at least in part, by two United States Supreme Court decisions, both of which have been legislatively overturned by Congress in its effort to ensure that the purposes of its landmark 1986 Amendments to the FCA are fulfilled.

In 2001, citizen Karen Wilson filed an FCA action on behalf of the United States. She alleged that the defendant local governments, local federal officials, and others, had violated the FCA by filing false claims or causing them to be filed for money available from a federal flood remediation program. She also alleged

1

that defendant Graham County Soil & Water Conservation district had retaliated against her in violation of the FCA for blowing the whistle on the false claims. The district court ruled that the retaliation claim was time-barred, but allowed an interlocutory appeal. This Court reversed, holding that the six-year limitations period set forth in the FCA governed. 367 F.3d 245 (4th Cir. 2004). The U.S. Supreme Court granted cert and reversed, holding that there was no applicable limitations period in the FCA for the retaliation claim and that the limitations period for the most closely analogous state law claim applied. 545 U.S. 409 (2005). Applying that holding, this Court dismissed the retaliation claim and remanded for further proceedings on the rest of the claims. 424 F.3d 437 (4th Cir. 2005). Congress subsequently amended the FCA to establish a uniform limitations period for FCA retaliation claims. *See* Dodd Frank, Pub. L. 111-203 § 1079(A)(c)(3)(2010), *codified in pertinent part at* 31 U.S.C. § 3730(h)(3)(setting uniform limitations period of 3 years for retaliation actions).

Upon remand, the district court dismissed the case on the ground that the public disclosure bar of the FCA precluded subject-matter jurisdiction. This Court reversed. 528 F.3d 292 (4th Cir. 2008). Its decision included the holding that the sources of disclosures enumerated in the public disclosure bar of the FCA that could trigger the bar did not encompass reports or audits of local or state

governments. *Id.* The U.S. Supreme Court granted cert and reversed, holding otherwise. 559 U.S. 280 (2010). However, prior to the issuance of that decision, Congress legislatively overturned the prospective decision, rendering it dead letter for all future FCA claims. *See* Patient Protection and Affordable Care Act, Pub. L. 111-148, § 10104(j)(2) (2010), *codified in pertinent part at* 31 U.S.C. § 3730(e)(4)(A) (restricting audits, reports and investigations that could trigger the public disclosure bar to those that are federal).

This Court remanded the case to the district court with instructions to make factual findings and legal conclusions as to whether the public disclosure bar applied. On October 1, 2013, the district court granted defendants' motion to dismiss for lack of subject-matter jurisdiction based on the public disclosure bar of the FCA. Relator Wilson timely appealed.

## STATEMENT OF THE FACTS

### A. The Government Program

In February 1995, a storm caused significant damage to several counties in western North Carolina, including Graham and Cherokee counties. (50 at ¶ 28) Pursuant to the federal Emergency Watershed Protection Program, a grant program known as EWP-216 was instituted for those counties to assist in the clean-up and remediation necessitated by the flooding. (*Id.*)

3

Special-purpose government entities Graham County Soil & Water

Conservation District ("Graham District") and Cherokee County Soil & Water

Conservation District ("Cherokee District")  assisted with the administration of the

EWP-216 programs for their respective countries.  (686-90)  The federal agency

NCRS (an agency of the USDA)  was ultimately responsible for administering the

EWP-216 programs.  (686)

### B.    Karen Wilson — Graham District Secretary

Beginning in 1993, Karen Wilson worked as the secretary of Graham

District.  (393 at ¶ 1) She resigned in 1997.  (61 at ¶ 69)  In her role as secretary

she was responsible for general office duties such as paying bills, depositing

funds, payroll and payroll taxes, and typing and filing the paperwork for the

various projects of Graham District, including the EWP projects for Graham

County. (393 at ¶ 1)  Graham District had only two employees while Wilson

worked there — Wilson and Keith Orr. (395 at ¶ 5)  In addition to Wilson and Orr,

two other people, federal NCRS employees Richard Greene and William Timpson,

also worked in the office. (*Id*.)  And Greene supervised Wilson.  (*Id*.)

### C.    Earlier Wrongdoing By the Individual Defendants.

Shortly after Wilson started her employment with Graham District in 1993,

she noticed checks made out to "Fantasia" being left by local residents at the office

for Richard Greene.  (393 at ¶ 2(a)-(c))  "Fantasia" was a side business run by Greene and his wife supplying filter cloth to residents. (Doc. 256-3 p. 1) (Wilson's Nov. 14, 1996 Statement ("1996 Statement")  Wilson overheard conversations between Timpson, Orr and Greene over dividing the profits from the sale of filter cloth.  (*Id*.)  From talking to employees at the Cherokee District, Wilson learned that Greene was paying those employees money for the sale of the filter fabric.  (*Id*.)

    **D.    Key Allegations In Complaint.**

The relevant allegations in Wilson's Third Amended Complaint include the following:

1)  With respect to the EWP Program in Graham County, Richard Greene and William Timpson, federal employees involved in the administration of the program for Graham County and the surrounding counties  conspired with Keith Orr to use Orr as the front man to do work for, and receive proceeds from the program, while the three would split those proceeds.  The two federal employees approved  Orr's work for payment despite the facts that i) he was awarded the work without any bidding process or written contract; ii) he had a conflict of interest because he was an employee of the government entity who administered the program and was also an inspector of the program; and iii) the work was not completely performed.  (50-1 at ¶¶ 31(a)-(f); 52 at ¶ 31(i))

2)  The conspirators also stole logs and timber from the EWP program, sold them, and split the proceeds.  (52 at ¶ 31(g))

3)  With respect to the EWP Program in Cherokee County, the three conspirators in the Graham County EWP conspiracy further conspired with Billy Brown to have him and his construction company  be the front man to do work for and receive proceeds from the program in Cherokee County, while the five of them would split the proceeds.  (52-3 at ¶ 31 (j)-(l))

Those improprieties  rendered the claims made under the EWP Program false.   The defendant government entities knew of those improprieties, or chose to look the other way, and were therefore also  liable for those false claims, in addition to the individuals.  (49 at ¶ 31(b) & (c); 51 at ¶ 31 (l))

### E.    Wilson — A Unique Viewpoint As The Fraud Unfolds

Wilson was uniquely positioned to learn about the fraud set forth in her complaint involving Graham County and Graham District.  She was Keith Orr's co-worker, Richard Greene's subordinate, and worked in the same office as Orr, Greene and Timpson.  She cut the checks for Orr, and prepared many of the EWP program documents.  (395 at ¶ 5)  She obtained her knowledge of her allegations in her complaint solely from her work as District Secretary.  (395 at ¶ 4)

### F.    Wilson's 1995 Letter To The USDA

On December 7, 1995, Karen Wilson wrote a short one-page letter to

USDA Special Agent  Richard Gallo ("1995 Letter"), which included the

following:

> I was told by Keith Orr, NCASP technician that when the EWP-216
> project began in Graham & Cherokee counties that he, Richard
> Greene, & William Timpson [federal officials overseeing program]
> each put up $1,000 to buy materials and were doing the cribbing and
> seeding themselves, dividing any profits in both counties.  The money
> in Graham County has been paid to Keith Orr, and the money in
> Cherokee county has been paid to Billy Brown.  I have been present
> when Richard, Bill, & Keith cashed checks and divided the money.
> The auditors informed me that Keith as a salaried employee should of
> never received these funds. . . [Greene] told the county manager that
> the SWCD contracted the work to Keith Orr.  No contract ever
> existed with anyone.

* * * *

I could write much more but I know your time is valuable
(388)

### G.    The Graham County Audit Report — Issued In 1996.

In her role as Graham District secretary, Wilson testified that she provided

the files to the Crisp & Hughes auditors, (395), and that she expressed her

concerns to the auditors about Orr getting paid both as an employee and for EWP

work (395-96)

The Graham County Audit Report ("Audit Report") was distributed by the

firm of Crisp & Hughes on April 26, 1996 and reported on the period March 27,

1995 — November 8, 1995. (378)  The Audit Report, was intended for

distribution, and was distributed, only to government officials and entities.  (378,

380)  The Audit Report was addressed to the Graham County Board of

Commissioners and it states that "[t]his report is intended solely for your

information and should not be used by those who did not participate in

determining the procedures."  (380)   The Audit Report mentioned that an

employee appeared to be ineligible to receive EWP funds. (383)

### H.    Wilson's 1996 Written Statement To Special Agent Golec

On November 14, 1996, Karen Wilson provided a written sworn statement

to USDA Special Agent Golec ("1996 Statement"). (247-52)  The statement

detailed Wilson's allegations that federal employees Greene and Timpson

conspired with Orr to get EWP monies for Graham County and with Brown to get

EWP monies for Cherokee County by pooling the upfront money and then

splitting the proceeds.   She also set forth some of the improprieties involved in

the implementation of their conspiracies — that their front man for Graham

County — Orr, was not a proper recipient of the money because of a conflict of

interest, and that some of the work was not performed. (Id.)

She also made statements regarding Greene's theft and sale of the logs that

were to be used in constructing the EWP's cribbing structures:

8

I heard in the office from Richard Greene that the trees/timber that
had fallen down after the flood along river beds and were to be used
in cribbing structures had been stolen.  I mentioned this to Keith Orr
in his SWCD office in 1995, approximately 2 or 3 days after Richard
Greene told me of the theft, and he told me that Richard Greene had
done away with them and he did not know who Greene had sold them
to.
(252)

## I.    The USDA Report Issued By Special Agent Golec In 1997

On August 13, 1997, USDA Special Agent Ken Golec  issued a Report of

Investigation ("USDA Report"). (264-297)  In the USDA Report, Golec concluded

that Richard Greene had stolen logs connected to the EWP Program and had sold

them. (See 266)  The first page of the USDA Report shows a distribution list of 10

people, all of them government law enforcement officials. (264)  The first page

also included this warning against any further distribution:

> This document is FOR OFFICIAL USE ONLY.  It and its contents
> are not to be distributed outside your agency, not duplicated, without
> the public clearance from the Office of Inspector General, USDA.
> (*Id.*)

### SUMMARY OF ARGUMENT

The district court dismissed this action because it concluded that the FCA's

public disclosure bar precluded the action.   In its dismissal, it concluded that

Wilson had actually derived the allegations in her complaint from the public

disclosure of two reports — the Audit Report and USDA Report. This conclusion was erroneous for two reasons.

First, as this Court has held, to trigger the public disclosure bar, the allegations must have been affirmatively disclosed to the public (and the citizen derived his allegations from that public disclosure). The district court found that the Audit Report and USDA Report had been distributed to only government officials. The overwhelming weight of federal appellate authority correctly holds that disclosure to the government is not disclosure to the public. Thus, the district court erred as a matter of law in concluding that those disclosures constitute affirmative disclosures to the public. Consequently, neither report triggered the public disclosure bar here.

Second, even if the two reports had been publicly disclosed, and they were not, in order to trigger the public disclosure bar Wilson had to have derived her allegations of wrongdoing in her complaint from those public disclosures. This Court has made clear that what is determinative on this point is whether she derived her *knowledge* of the wrongdoing from the public disclosures.

It is clear that Wilson did not derive her knowledge of the alleged wrongdoing from the purported public disclosures — the Audit Report and the USDA Report. The district court found that the 1995 Letter and 1996 Statement

10

were issued by Wilson on dates prior to the dates of the purported public disclosure of the Audit Report and USDA Report, respectively. Yet the letter and statement contain the gist of the wrongdoing set forth in the respective purported public disclosures. Thus, they demonstrate that Wilson had learned of the alleged wrongdoing by the time those allegations were purportedly publicly disclosed. Consequently, she could not have derived her knowledge of the wrongdoing from those disclosures. Therefore, the district court committed clear error when it found to the contrary. This is yet an additional reason that the public disclosure bar does not operate to strip the district court of jurisdiction over this case.

Furthermore, even if she were deemed to have derived some of her allegations from an applicable public disclosure, which she did not, the public disclosure bar does not apply because Wilson is an "original source." She gained her knowledge of the gist of wrongdoing directly from the participants, with whom she worked as Graham District secretary, and from her work on the very transactions in question, and she disclosed that information to the Government before she filed her FCA action in 2001. The district court's conclusion to the contrary is clear error.

# ARGUMENT

## Standard Of Review

This Court reviews the district court's factual findings for clear error and the legal conclusions that flow from them *de novo*.  *Velasco v. The Government Of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)("We review the district court's factual findings with respect to jurisdiction for clear error and the legal conclusion that flows therefrom *de novo*.").

## Discussion

## I.    The District Court Erred In Concluding That The Public Disclosure Bar Was Triggered.

The district determined that the public disclosure bar[1] precluded this action

---

[1]  As noted earlier, *supra*, the public disclosure bar of the False Claims Act was amended in 2010. Because the claims at issue in this action arose prior to 2010, the pre-2010 version of the bar applies here.  *See United States ex rel. Radcliffe v. Purdue*, 737 F.3d 908, __, 2013 U.S. App. LEXIS 24708 (4th Cir. 2013) at *24-5 (applying pre-2010 version to transactions occurring prior to 2010).  The pre-2010 version of the public disclosure bar is as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(2009).

because it concluded that the Audit Report and USDA Report[2] had been publicly

disclosed, and that Wilson had derived the allegations in her complaint from those

two reports.[3]  As demonstrated below, that conclusion is erroneous as a matter of

law, and is clear error.

A.    **The District Court Erred, As A Matter Of Law, In Concluding
        The USDA Report And The Audit Report Were Publicly
        Disclosed.**

In its order of remand to the district court, this Court held that, for a

disclosure to trigger the public disclosure bar, it must have been affirmatively

disclosed to the public.  *See* 399 Fed. Appx. 774, 776 (4th Cir. 2010)(citing with

approval *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d

1514 (10th Cir. 1996)).  "The mere existence of a report that is only theoretically or

potentially available to the public cannot constitute public disclosure." *Ramseyer*,

90 F.3d at 1518 (internal quotations and citations omitted).  As demonstrated

---

[2]  The district court faults Wilson for not addressing the USDA Report, but
the defendants abandoned any argument that the USDA Report was an applicable
public disclosure.  (See Record 350 (no mention of the USDA Report in Graham
County's Proposed Findings of Fact and Conclusions of Law); 351 (no mention of
the USDA Report in Graham District's and Cherokee District's Proposed Findings
of Fact and Conclusions of Law).

[3]  The district court, *sua sponte*, asserts in its decision, with little discussion,
that there is a third public disclosure that is applicable — the Greene Indictment
(713)  The defendants did not assert that the Greene Indictment was an applicable
public disclosure.  (See Records 350 & 351)

13

below, neither the Audit Report nor the USDA Report was affirmatively disclosed to the public.

As for the USDA report, the sole factual finding upon which the district court based its conclusion that the report was publicly disclosed was its finding that the report had been distributed to several people, all of them Government officials. (704 ("The USDA Report was distributed to the NRCS, the Office of General Counsel for USDA, the North Carolina Bureau of Investigation (SBI), and the United States Attorney for the Western District of North Carolina.")) The court relied upon a similar factual finding with respect to the Audit Report, basing its conclusion that the Audit Report was publicly disclosed on its finding that it was distributed to a list of government officials and employees. (701-04)

Additionally, the USDA Report, on its face, contained a prohibition of its public distribution, or for that matter, its distribution to anyone else other than the named government officials. And the Audit Report was distributed to the government agencies with the written caveat that it was issued solely for their use.

In concluding that the distribution of these reports to government officials constituted disclosures to the public, the district court erred as a matter of law. As federal courts have properly concluded, disclosures to government officials and employees do not constitute disclosures to the public. See *United States ex rel.*

14

*Rost v. Pfizer, Inc*. 507 F.3d 720, 730-31 (1st Cir. 2007) ("In our view, a 'public disclosure' requires that there be some act of disclosure to the public outside of the government."); *Kennard v. Comstock Res., Inc*., 363 F.3d 1039, 1043 (10th Cir. 2004) (public disclosure requirement "clearly contemplates that the information be in the public domain in some capacity and the Government is not the equivalent of the public domain"); *United States ex rel. Hagood v. Sonoma* Cty., 929 F.2d 1416, 1419 (9th Cir. 1991)(disclosure by one government employee to another does not constitute public disclosure); *United States v. Smith & Nephew, Inc.*, 749 F. Supp. 2d 773, 782-84 (W.D. Tenn. 2010)(following *Rost* in rejecting the proposition that the disclosure to government officials constitutes disclosure to public); *United States ex rel. Whitten v. Cmty. Health Sys.*, 575 F. Supp. 2d 1367, 1379 (S.D. Ga. 2008)(following *Rost*); *see also United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1496 n.7 (11th Cir. 1991); ("Even if a government investigation was pending at the time [a relator] filed his *qui tam* complaint, such fact would not jurisdictionally bar [the relator] from initiating suit under the False Claims Act."); *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1518 (9th Cir. 1995) (disclosure of audit to employees of audited entities does not constitute "public disclosure," even if audit is subject to disclosure under FOIA).

The fact that all of the government agency recipients were not federal does not change the conclusion. *See Ramseyer*, 90 F.3d at 1520 ("the government entity possessing the information in this case was not the federal government, but a state agency, DHS. However, we do not believe this fact undercuts our conclusion that, under the 1986 qui tam amendments, the touchstone is actual public disclosure rather than mere knowledge of fraud").

This view has firm support in the legislative history of the 1986 amendments to the FCA. *See United States ex rel. Findley v. FPC-Boren Employees Club*, 105 F.3d 675, 684 (D.C. Cir. 1997) ("Congress thus changed the focus of the jurisdictional bar from evidence of fraud inside the government's overcrowded file cabinets to fraud already exposed in the public domain.").

In reaching its conclusion that a disclosure to a government official constitutes a disclosure to the public, the district court relied upon *United States ex rel. Matthews v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999). (704) However, as a district court in this Circuit has recently observed, "no other circuit has followed *Matthews* [on this point], and instead circuits that have addressed this issue have uniformly held that merely providing information to a public official is not a public disclosure." *See United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 844 (E.D. Va. 2013). Thus, as the district court in

16

*Beauchamp* concluded, "there is no sound reason for construing the public disclosure bar to include disclosures that have only been revealed to Government officials." *See id.*

The district court found that the Audit Report was publicly distributed for the additional reason that it was also distributed to Karen Wilson. However, Wilson was an employee of Graham District, a government agency. And Graham District was one of the listed distributees. (378 (4/26/96 cover letter: "one copy for the Graham County Soil and Water Conservation Distrct")). Thus, the distribution to her — an employee of one of the government distributees — did not qualify as a disclosure of the Audit Report to the public. *See Rost*; *Kennard*; *Beauchamp.*

Accordingly, the fact that the Audit Report and the USDA Report were not publicly disclosed, by itself, precludes the application of the public disclosure bar based on those disclosures.

**B.    The Conclusion Of The District Court — That Wilson Derived Her Allegations From the Audit Report And USDA Report — Is Refuted By Its Acknowledgment That Wilson Wrote Letters Pre-dating The Issuance Of The Reports Because Those Letters Contain The Gist Of The Alleged Wrongdoing.**

As this Court recently reiterated, what is determinative as to whether a citizen derived her allegations from the public disclosure is this:  whether she derived the knowledge of the alleged wrongdoing from that disclosure. *United*

17

*States ex rel. Radcliffe v. Purdue*, 737 F.3d 908, __, 2013 U.S. App. LEXIS 24708 (4th Cir. 2013) at *27 (public disclosure bar applies only "where the relator actually derived from that [public] disclosure the *knowledge of the facts underlying the action*." (emphasis in original)(internal quotations and citations omitted). If she did not, the bar does not apply. *Id*. As demonstrated below, the district court's conclusion that Wilson derived her allegations from the Audit Report and the USDA Report is clear error. This is another, independent reason why the public disclosure bar does not preclude this action.

### 1.    USDA Report

The district court found that Wilson derived the allegations of wrongdoing regarding the stolen logs from the USDA Report, which the court pointed out was issued on August 13, 1997. (704) However, it is clear that Wilson had already gained her knowledge of the wrongdoing regarding the logs by the time she wrote her 1996 Statement, which the court acknowledged was on November 14, 1996. (711) Thus, she could not have gained her knowledge of this wrongdoing from the USDA Report. Accordingly, the district court's conclusion that she actually derived her allegations of that wrongdoing from the USDA Report is clear error.[4]

---

[4] The putative Greene Indictment has even less pertinent information than does the USDA Report and was issued December 8, 1998, later than the USDA Report (See Record 261-1). Thus, the same reasoning and conclusion applies to the Greene Indictment that applies to the USDA Report.

The district court points out that the 1996 Statement does not contain all of the specific details about the stealing of the logs that is found in the USDA Report. However, the statement contains the gist of the wrongdoing:

> I heard in the office from Richard Greene that the trees/timber that had fallen down after the flood along river beds and were to be used in cribbing structures had been stolen.  I mentioned this to Keith Orr in his SWCD office in 1995, approximately 2 or 3 days after Richard Greene told me of the theft, and he told me that Richard Greene had done away with them and he did not know who Greene had sold them to.
> (252)

The statement clearly contains the allegation that  Greene stole the logs and sold them, which in a nutshell is what the USDA Report alleges.  In reaching its conclusion that Wilson derived her allegations from the USDA Report, the district court suggests, based on other information in the report, that the author of the USDA Report obtained his knowledge of the wrongdoing from sources other than Wilson.  (712)  However, it is irrelevant where the author of the USDA Report derived his knowledge of the wrongdoing; rather, what is determinative is the knowledge of Karen Wilson and whether that knowledge was derived from the USDA Report.  *See Radcliffe*.  Given the timing of the issuances of the USDA Report and the 1996 Statement, the answer must be no.

19

## 2.     The Audit Report

The district court concludes that Karen Wilson derived her allegations of wrongdoing involving Keith Orr from the Audit Report.  Inexplicably, the district court ignores the fact that these allegations of wrongdoing are only a facet of the allegations that Orr was a front man for the federal inspectors Greene and Timpson, who were to share in the proceeds that Orr would obtain from the EWP program.

The Audit Report noted that 1) part of the work of the EWP Program for Graham County was performed by an unnamed individual who appeared to be ineligible to do it  because he was acting as an approved project inspector for the program; and 2) that the issuance of  some of the contracts under the program lacked the proper documentation, namely no records of the bids were kept.  (693-94)

The district court found that Wilson derived the allegations of wrongdoing involving Orr from the Audit Report, which the court pointed out was issued on April 26, 1996. (378)  However, it is clear that Wilson had already gained her knowledge of the wrongdoing by the time she wrote her 1995 Letter, which the court acknowledged was on December 7, 1995.  (690)  That letter demonstrated that Wilson already had gained her knowledge of the conspiracy between the

20

federal inspectors Greene and Timpson, and Keith Orr to fund Keith Orr as a front man to do EWP work (which Greene and Timpson would inspect and approve) and then they would split the proceeds.  (388 ("I was told by Keith Orr, NCASP technician that when the EWP-216 project began in Graham & Cherokee counties that he, Richard Greene, & William Timpson each put up $1,000 to buy materials and were doing the cribbing and seeding themselves, dividing any profits in both counties.  The money in Graham County has been paid to Keith Orr")).   The letter also shows her knowledge as to the ineligibility of a contractor, whom she knows to be Orr, to do EWP work, and that the necessary contract documentation for Orr's work is lacking.  (*Id*. ("The auditors informed me that Keith as a salaried employee should of never received these funds. . . [Greene] told the county manager that the SWCD contracted the work to Keith Orr.  No contract ever existed with anyone.")).   Because the 1995 Letter pre-dated the issuance of the Audit Report, and demonstrates that she had knowledge of alleged wrongdoing at the time the letter was written, she could not have derived her knowledge of the wrongdoing from the Audit Report.

Accordingly, the district court's conclusion that she actually derived her allegations of that wrongdoing from the Audit Report is clear error.

21

In reaching its conclusion, the district court appeared to conflate the Audit Report with pre-issuance discussions that the auditors had with Wilson**.** (709) Wilson testified that, in the process of assisting the auditors with their audit, she told the auditors about the irregularities involving Keith Orr. (395-96 at ¶ 6) Wilson's testimony that she alerted the auditors to the conflict of interest and the improprieties is plausible, and indeed compelling because an auditor in a routine audit is simply not going to discover such an irregularity in the absence of a tip from an insider. Nonetheless, the district court discounted that testimony. However, whether she alerted the auditors or vice versa makes no difference on this point. The putative public disclosure set forth by the district court was the Audit Report, which the court concluded was publicly disclosed by its distribution in April 1996. The court did not make any findings that any pre-issuance oral conversation between the auditors and Wilson constituted an applicable public disclosure, or that any purported allegations of wrongdoing contained therein were thereby publicly disclosed. Nor would such conversations be considered public disclosures. *See, e.g., United States ex. rel. Whitten v. Cmty. Health Sys.*, 575 F. Supp. 2d 1367, 1377 (S.D. Ga. 2008)(rejecting argument that "disclosure made by government agents to third parties during the course of an or audit or investigation" constitute public disclosures).

Therefore, the court's conclusion that Wilson derived her allegations of wrongdoing from the Audit Report and USDA Report is clear error because, as the district court acknowledged, Wilson wrote the 1995 Letter, and her 1996 Wilson Statement, before the public disclosure of the Audit Report and USDA Report, respectively, and her letter and statement demonstrate that she already had gained the knowledge of the wrongdoing prior to their purported public disclosure by the two reports; thus, she could not have derived her knowledge from those two reports.

Accordingly, because she did not derive her knowledge of the alleged wrongdoing from the Audit Report or the USDA Report, the public disclosure bar does not preclude this action.  *See Radcliffe*.

## II.    In Any Case, The District Court Erred In Concluding That Wilson Was Not An Original Source.

Because, there is no applicable public disclosure from which Wilson derived the knowledge of her allegations the bar does not operate to preclude this action; thus, whether Wilson was an original source is irrelevant.

In any case, contrary to the district court's conclusion, as demonstrated below, Wilson was an original source of her allegations.  She was the quintessential "insider" in her role as secretary of Graham District.  She was Orr's co-worker and writer of his checks, and thus had direct knowledge of his

23

conflicting roles as Graham District employee and EWP funds recipient, as well as of the conspiracy of Orr, Timpson and Greene, all of whom she worked with on a daily basis.   And she and her counterpart at Cherokee District, Karen Bates, collaborated and shared information.  (396 at ¶ 7)

Furthermore, she disclosed the information on which her allegations are based to the Government in interviews and in the 1995 Letter and 1996 Statement prior to filing suit.

This is enough for her to qualify as an original source.[5]  *See U.S. ex rel. Springfield Ry.Co. v. Quinn*, 14 F.3d 645, 657 (D.C. Cir. 1994)("direct and independent knowledge of any essential element of the underlying fraud transaction" is sufficient to qualify relator as an original source); *United States ex rel. Branch Consultants , LLC v. Allstate Ins.*, 782 F. Supp. 2d 248, 277 (E.D. La. 2011)(to qualify as an original source, relator need not have direct and

---

[5]  The applicable pre-2010 version of the prong of the public disclosure bar defining an original source is as follows:

> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(B)(2009).

independent knowledge of every detail of the allegations, only a certain "core of information" underlying the allegations).

The district court concluded that the information that Wilson obtained from one of the defendants and co-conspirators, Keith Orr, was not "direct," because it came from another person.  (718)  This reasoning, that obtaining information from one of the alleged participants in the fraud, is not "direct" and precludes one from being an "original source" results in the ludicrous situation that only the participants in the fraud will qualify as "original sources."  Certainly, this result is an unreasonable construction of the provision that would frustrate the Congressional purposes of the False Claims Act and should be rejected, as should the district court's conclusion that Wilson was not an 'original source" of her allegations, which is clear error.

## CONCLUSION

Based on the foregoing, Karen Wilson requests that the Court determine that the district court has subject-matter jurisdiction over the case, and reverse and remand the case to the district court for further proceedings.

25

Respectfully submitted,

/s/ Mark T. Hurt
Mark T. Hurt
THE LAW OFFICES OF
  MARK T. HURT
159 West Main Street
Abingdon, VA  24210
(276) 623-0808

*Counsel for Appellant*

### CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation,
### Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains 5,653 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportional spaced typeface using Word Perfect in 14 point Times New Roman.

/s/ Mark T. Hurt
Mark T. Hurt

Dated: January 29, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 29, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Martin McCracken
NORTH CAROLINA DEPARTMENT
  OF TRANSPORTATION
1505 Mail Service Center
Raleigh, NC  27699
(919) 707-4480

Zeyland G. McKinney, Jr.
MCKINNEY TALLANT
  & BRYSON, PA
P.O. Box 1549
Robbinsville, NC  28771
(828) 479-2442

*Counsel for Appellees*
  *Graham County Soil &Water Conservation*
  *District, et al.*

*Counsel for Appellees*
  *Keith Orr, et al.*

Sean F. Perrin
WOMBLE CARLYLE SANDRIDGE
  & RICE, PLLC
301 South College Street
Charlotte, NC  28202
(704) 331-4992

*Counsel for Appellees*
  *Raymond Williams, et al.*

In addition to the above, a copy of the foregoing is being sent via U.S. Mail,

postage pre-paid, to the following:

Richard Green
P.O. Box 96
Topton, NC 28781

William Timpson
P.O. Box 318
Marble, NC  28905

Billy Brown
P.O. Box 1185
Robbinsville, NC  28771

*Pro Se*

*Pro Se*

*Pro Se*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219